favor of the plaintiffs. In view of the provisions of the contract, I think this act on his part has some probative force.

I think the judgment was right, and should be affirmed.

---

### HALL v. THOMAS et al.

(Supreme Court, Special Term, New York County. June, 1908.)

1. MORTGAGES — FORECLOSURE — SURPLUS — DISTRIBUTION—EVIDENCE—ADMISSIBILITY.

On a reference to ascertain amounts due mechanics' lien claimants and the priorities, it was proper to receive in evidence proof of the want of consideration of a deed made by the owner to another, as trustee, and purporting to be for the benefit of all creditors, as the deed was an executory instrument, and by Code Civ. Proc. § 840, a seal on an executory instrument is only presumptive evidence of a sufficient consideration, and as the scope of the reference was as extensive as the issues.

2. MECHANICS' LIENS—NOTICE OF LIEN—REQUISITES—NAME OF OWNER.

Lien Law, Laws 1897, pp. 515, 518, 519, c. 418, § 2, section 9, subd. 2, and section 10, requiring a notice of lien to state the name of the owner, was complied with as to claimants who claimed no benefit under a trust deed for the benefit of creditors, but declined to accept such benefit, and who named the grantor as the true owner.

3. SAME—DESCRIPTION OF PROPERTY.

Under Lien Law, Laws 1897, p. 518, c. 418, § 9, subd. 7, requiring only a description of the property sufficient for identification, and section 22 (page 525), providing that a substantial compliance shall be sufficient for the validity of a lien, error in the description of a lot in a notice of lien as being 50 feet wide, instead of 25 feet, did not invalidate the lien.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Mechanics' Liens, §§ 214–218.]

4. SAME—AMOUNT OF CLAIM.

Under Lien Law, Laws 1897, p. 525, c. 418, § 22, providing that a substantial compliance shall be sufficient for the validity of a lien, a statement in a notice of lien of the amount due as $2,893.90, instead of the actual amount due, $2,284.79, did not invalidate the lien, where there was no willful intent to misstate the actual amount due, since an erroneous statement of the amount due, to vitiate a lien, must be willful or so grossly exaggerated as to raise a presumption of willfulness.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Mechanics' Liens, § 253.]

5. SAME—PRIORITY OF LIENS.

Under the express provisions of Lien Law, Laws 1897, p. 520, c. 418, § 13, persons standing in equal degrees as colaborers or materialmen have priority according to the date of filing their respective liens.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Mechanics' Liens, §§ 336–341.]

6. MORTGAGES—FORECLOSURE—DISTRIBUTION OF PROCEEDS—MECHANICS' LIENS —PREFERENCES.

An instrument, at most a trust deed in the nature of a mortgage for the benefit of creditors, is not valid as against subsequent mechanics' liens, and the lienors have preference in the surplus money arising from a mortgage foreclosure.

7. MECHANICS' LIENS—"MATERIALMEN."

Under Lien Law, Laws 1897, p. 515, c. 418, § 2, defining a materialman to be one other than a contractor who furnishes materials for an improvement, persons who contracted directly with the owner, though solely to

furnish materials, are original independent contractors, and not "material-men," entitled to a preference under section 13.

[Ed. Note.—For other definitions, see Words and Phrases, vol. 5, p. 4409; vol. 8, p. 7718.]

Surplus money proceedings arising from a foreclosure sale in an action by Eliza N. Hall against Andrew J. Thomas and others. Motion to confirm the report of the referee. Motion granted.

The following is the opinion of William Henry Knox, referee:

This order of reference directs me to ascertain the amounts which are due to the claimants and which are liens upon the surplus money, and the priorities of those liens. The judgment of foreclosure was filed January 27, 1908, and the report of sale March 10, 1908. The lot upon which the building was erected is situated on the southwest corner of 178th street and La Fontaine avenue, in the borough of the Bronx, New York City, being 25 feet front on the avenue by 100 feet deep on the street. The amount of surplus money held by the chamberlain of the city of New York to the credit of this proceeding is $6,049.36. The sum total of the claims proved is $12,417.34.

The date of maturity of claim—that is, of the furnishing of the last item of material—by Miller, for cut stone, for $1,400, was July 15, 1907; by Bowne, for brick, lime, and cement, for $2,284.79, was July 22, 1907; by Schneider, for steamheating apparatus, for $975, was July 23, 1907; by Silleck, for lumber and timber, for $1,438.49, was July 30, 1907; by Newkirk, for nails and sash weights, for $326.56, was July 31, 1907; by Kertscher & Co., for window sashes, for $2,200, was August 1, 1907; by Thomas C. Edmonds & Co., for glass, for $270, was August 2, 1907; by Heil, for stair hand railing, for $20, was August 2, 1907; by Still, for dumb waiters, for $120, was August 2, 1907; by Galbraith, for lath, lime, and plaster, for $341, was August 6, 1907; by Klotz, for fireproofing, for $85, was August 6, 1907; and by Haldane, for gas fixtures, for $2,958.50, was August, 1907. As to the nature and justice of the claims by Phelan, for $900, by Sheridan, for $947, by Furlong, for $867, aggregating $2,714, no proof has been offered. Those persons filed notices of mechanics' liens against the real property, of which the following liens were proved before me, in the following order of priority as to dates of filing: Henry G. Silleck, Jr., for $1,438.49, August 5, 1907, at 11:20 a. m.; Kertscher & Co., for $2,200, August 6, 1907, at 9:06 a. m.; Charles Schneider, for $975, August 6, 1907, at 9:16 a. m.; Thomas C. Edmonds & Co., for $345, August 6, 1907, at 10:23 a. m.; Thomas B. Bowne & Son Company, for $2,893.90, August 6, 1907, at 10:37 a. m.; James Galbraith, for $341, August 6, 1907, at 1:32 p. m.; A. C. Newkirk & Co., for $326, August 7, 1907, at 10 a. m.; August Heil, for $20, August 7, 1907, at 12:21 p. m.; A. E. Klotz Fireproofing Company, for $85, August 7, 1907, at 1:51 p. m.; Thomas Haldane, for $2,958.50, August 7, 1907, at 1:30 p. m.; Stephen G. Still, for $120, August 9, 1907; and Thomas B. Bowne & Son Company, for $2,284.79, September 28, 1907. The lien of Edmonds & Co. was filed for $345, which covered materials delivered and to be delivered. Materials to the amount of $270 were delivered, and the lien was established for that amount.

Thomas, the owner of the real property, made a deed of the premises to J. Charles Wechsler, as trustee, on August 2, 1907. Neither of them made any proof of claim upon the surplus money, nor was the deed put in evidence. The deed was made to J. Charles Wechsler, as trustee, without any consideration, and purported to be for the benefit of all creditors of Thomas. It was proper to receive in evidence the proof of that want of consideration for the deed (Mutual v. Anthony, 23 Wkly. Dig. [N. Y.] 427), as the deed is an executory instrument (Code, § 840), and as the scope of this reference is as extensive as the issues (Kingsland v. Chetwood, 39 Hun, 607; Mutual Life v. Anthony, 50 Hun, 101, 4 N. Y. Supp. 501). If competent, material, or relevant evidence on that point, or on any other important one were excluded, the court would be without a guide on the question of confirming the report. Code, § 2407.

It is contended that the liens of Silleck, Kertscher & Co., Schneider, Edmonds & Co., and Bowne are invalid because their notices do not state that Mr. Wechsler was the owner of the legal title. The name of the owner is required by section 2, section 9, subd. 2, and section 10 of the lien law (Laws 1897, pp. 515, 518, 519, c. 418) to be stated in the notice. Who, then, was the true owner, Mr. Wechsler or Thomas? Those notices of lien state that Thomas was. A lien has priority over a conveyance of property as a general assignment for the benefit of all creditors within 30 days before the filing of the lien. Lien Law, § 13. An incumbrance made by the owner for the purpose of avoiding the provisions of the lien law as to lien priorities is void. Lien Law, § 7. The courts have followed the principle of these lien provisions. Mandeville v. Reed, 13 Abb. Pr. (N. Y.) 172; Kane Co. v. Kinney, 174 N. Y. 69, 66 N. E. 619; American M. Co. v. Merrick Const. Co., 120 App. Div. 150, 104 N. Y. Supp. 900; affirmed 190 N. Y. 24, 82 N. E. 739; Crane Co. v. Smythe, 182 N. Y. 545, 75 N. E. 1128. These claimants sought to hold, by their liens, the interest of the owner, and they made no mistake in Thomas' name. They accepted no benefit under his deed to Mr. Wechsler for the benefit of his creditors. They declined to accept such benefit. This is established by their filing of mechanics' liens and taking other steps to reach the surplus money. The deed, therefore, is of no effect at all as against these claimants, and as far as they are concerned Thomas remained the true owner until cut off by the foreclosure sale.

It is also objected against these liens that their notices state that the lot is 50 feet wide instead of 25. There was but this one building on this corner lot. If several buildings in a row be improved by a different quality or quantity of labor or material, they must be specified. Eisenbeis v. Wakeman, 3 Wash. St. 558, 28 Pac. 923; Portones v. Badenock, 132 Ill., 379, 23 N. E. 349; Lumber Co. v. Fehlhammer, 59 Mo. App. 664. The lien law requires only a description of the property "sufficient for identification." These notices of lien sufficiently complied with the requirement. That error of one dimension, being too large, has harmed or misled neither the owner nor the other lienors, and does not invalidate the lien. Lien Law, § 9, subd. 7; Lien Law, § 22; Walkam v. Henry, 7 Misc. Rep. 532, 27 N. Y. Supp. 997; Duffy v. McManus, 3 E. D. Smith (N. Y.) 657.

It is insisted that the lien of Bowne & Son Co. is invalid because their notice states that their claim was $2,893.90, instead of the actual amount due, $2,284.79. The error is explained by Mr. Baisely—that there was occasion for great hurry in filing the lien (as the priorities of the first five liens show), and in the absence of the bookkeeper he looked in the ledger for the balance due, which showed the balance to be $2,893.90, omitting a credit of $609.11. In their second notice of lien, filed September 28th, they correctly stated the actual amount due—$2,284.79. There was obviously no willful intention to misstate the actual amount due. An erroneous statement of the amount due, to vitiate a lien, must be willful or so grossly exaggerated as to raise a presumption of willfulness. Felgenhauer v. Haas, 123 App. Div. 75, 108 N. Y. Supp. 476; American Mortgage Co. v Butler, 36 Misc. Rep. 254, 73 N. Y. Supp. 334; Ringle v. Wallis, 149 N. Y. 439, 44 N. E. 175. In Williams v. Daiker, 33 Misc. Rep. 70, 68 N. Y. Supp. 348, the true amount was $2,040, whereas the amount claimed was $4,682.79, or more than double the lienor's demand. In Hecla v. Hall, 115 App. Div. 126, 100 N. Y. Supp. 696, the true amount was $12,125.43, whereas the amount claimed in the notice of lien was $24,255.92, more than double. In Aeschlimann v. Presbyterian Hospital, 165 N. Y. 296, 59 N. E. 148, 80 Am. St. Rep. 723, the true amount was $611, and the amount claimed in the lien was $2,786.40, although the claimant had on the previous day rendered a bill for only $811 to cover the full balance due. In New Jersey Steel Co. v. Robinson, 85 App. Div. 512, 83 N. Y. Supp. 450, the true amount was $16,000, whereas the amount claimed in the lien was $43,243. These cases, in which the liens were held to have been vitiated on account of excessive amounts claimed, are extreme ones, where willfulness was either proved or inferred. A mere mistake in name, amount, or dimension does not invalidate a lien. Lien Law, § 22.

The contention of some junior claimants is that the surplus money should be paid over to Mr. Wechsler, to be distributed under the trust deed among the creditors pro rata. This plea, while hopeless and against the statutory order of priorities, attracts sympathy, draws attention to that order's apparent want of equity in some cases, and suggests the wisdom of a possible amendment to suit cases like this. For instance, Miller, who furnished cut stone of the value of $1,400, has priority in date of maturity of his claim over all other claimants, and his cut stone was sold with the premises, and presumably helped to augment the amount of the surplus money. Yet he gets nothing. Of course, the answer is that the common law did not recognize a mechanic's lien (Birmingham v. Glen, 78 N. Y. 32), nor did equity (Withrow v. Glasgow, 101 Fed. 865, 42 C. C. A. 61), nor does England (Shaw v. Young, 87 Me. 274, 32 Atl. 897), and that he should have been more diligent in filing his lien. Persons standing in equal degrees have priority according to the dates of filing their respective liens. Lien Law, §§ 3, 13; Livingston v. Mildrum, 19 N. Y. 440.

The instrument by Thomas to Mr. Wechsler is not a valid deed, nor a trust mortgage, nor an incumbrance. It is nothing. It is void as against these claimants. At most it was, in effect, a trust deed in the nature of a mortgage for the benefit of creditors. As such it is not valid as against subsequent mechanics' liens; and the claimant lienors have preference in the surplus money. American Mortgage Co. v. Merrick Co., supra.

The claimants Newkirk and Bowne urge that, inasmuch as their liens are solely for materials furnished, they, as "material men," are entitled to priority over Kertscher & Co., Schneider, Edmonds & Co., and Galbraith. Then Silleck and Kertscher & Co., who furnished materials solely, are also in the same category. They are not materialmen, unless Thomas, the owner, was as well the contractor. Newkirk furnished nails and sash weights for $326.56, and Bowne furnished brick, lime, and cement for $2,284.79, under direct contracts with Thomas. They are, therefore, contractors, because a person who, in pursuit of an independent occupation, executes a specific thing according either to his own idea or a plan previously provided, for other persons, called ."the public," without submitting himself to their control with respect to details, but furnishing his own workmen, and representing their will only as to the result of the thing, and not as to the means by which it is accomplished, is a contractor.

The lien law recognizes and distinguishes an owner, a contractor, a subcontractor, a materialman, and a laborer. It prefers a laborer for wages, and a materialman. Code, § 3414; Lien Law, § 13. No laborer, employé, workman, or mechanic, nor subcontractor, nor materialman, is a lienor in this proceeding. "Materialmen," said Judge Houston (Curlett v. Aaron, 6 Houst. [Del.] 477), "are gentlemen in trade who do not follow the business of contracting to build homes for others, but who keep for. sale some materials that enter largely into buildings." If, for instance, Newkirk & Co. themselves had only furnished the nails, say of $26.56, but had contracted with John Doe to furnish and hang the sash weights, say for $300, and if John Doe had done so, and if Newkirk & Co. had filed the lien for $326.56, and if John Doe had filed a lien for the $300, John Doe, not Newkirk & Co., would be the materialman and also laborer, and under section 3414 of the Code and section 13 of the lien law, would be entitled to be paid the amount due him before any payment to Newkirk & Co. And if John Doe's daily or weekly wage workmen, who had hung the sash weights, had filed liens against him, they would also be entitled to a preference as laborers; or the Bowne Company, who contracted with Thomas, the owner, to furnish brick, lime, and cement towards the building of this house, had bought the brick from Richard Roe, the provisions of section 3414 of the Code and section 13 of the lien law would prevent the Bowne Company on filing a mechanic's lien and enforcing it in preference to a lien subsequently filed by Richard Roe, from pocketing the proceeds of their contract and major lien before the materialman, Richard Roe, was paid his minor lien. Similarly, those provisions deal with a subcontractor that owes a lot of materialmen and laborers.

There is no privity between a man who furnishes material or performs labor for the contractor and the owner. This being so, the former could have no lien against the latter's premises unless the statute specifically gave

it to him, either as a materialman or a laborer, which it does. Lien Law, section 3. Newkirk and Bowne, and, indeed, all the other claimants, as they contracted directly with Thomas, the owner, are original independent contractors, although in a particular line of materials, and could not be materialmen unless they had furnished materials to a contractor, which they did not do. The phrase "materialmen," besides its primary and universal meaning, has a secondary and technical meaning, certainly since 1897. "The term materialmen," defines section 2 of the lien law, "means any person other than a contractor who furnishes materials for such improvement." It is, therefore, a solecism to denominate an owner a contractor; and the incongruity, uselessness, and absurdity of the misnomer are apparent when one perceives that an owner could not sue and recover a judgment under the lien law against himself nor contract with himself.

Consequently the surplus moneys should be distributed as follows: First, for the fees, disbursements, and costs of this reference; second, to Henry G. Silleck, Jr., claimant, the sum of $1,438.49, with interest thereon from the 5th day of August, 1907; third, to Kertscher & Co., claimant, the sum of $2,200, with interest thereon from the 6th day of August, 1907; fourth, to Charles Schneider, claimant, the sum of $975, with interest thereon from the 6th day of August, 1907; fifth, to Thomas C. Edmonds & Co., claimant, the sum of $270, with interest thereon from the 6th day of August, 1907; sixth, to Thomas B. Bowne & Son Company, claimant, the balance of the surplus, to be applied toward the payment of its claim of $2,284.79.

Frank M. Avery and Phillips & Avery (Henry W. Eaton, of counsel), for Henry G. Silleck, Jr., Kertscher & Co. and Thomas C. Edmonds & Co.

Charles P. Hallock, for A. C. Newkirk & Co.

Philo P. Safford, for Charles Schneider.

John Davis (Charles Green Smith, of counsel), for Thomas B. Bowne & Son Co.

Douglas Mathewson (Edward J. Martin, of counsel), for August Heil, Thomas Haldane, and James Galbraith.

William E. Steward, for David Miller.

Loren N. Wood, for Stephen G. Still.

John P. Cohalan (Denis O'L. Cohalan, of counsel), for A. E. Klotz Fireproofing Co.

J. Charles Wechsler, in pro. per.

GREENBAUM, J. Motion to confirm report of referee granted.

---

## NAPIER et al. v. SPIELMANN et al.

(Supreme Court, Appellate Division, First Department. July 8, 1908.)

1. FORCIBLE ENTRY AND DETAINER—RIGHT OF PLAINTIFF TO POSSESSION.

N., having the control of the output of silk mills, contracted with defendants to install the goods from such mills in an annex to defendants' store, the lease of which stood in defendants' name. The goods were to be consigned to defendants, who were to provide a porter, an entry clerk, and business stationery, and were to defray insurance charges and advance a certain amount monthly for salaries and expenses, for which they were to have a lien on the goods. N. was to sell the goods, employing his own traveling salesmen, and paying all handling charges, but defendants were to receive the proceeds, and, after paying N. a certain commission, and retaining a commission for themselves, were to account to the manufacturers for the balance. Defendants were to be the sole judges as to whom credit should be given in making sales.